STATE v. W. J. COLE.

(Filed 4 October, 1911.)

1. Primary Elections—Legislative Acts—Constitutional Law.

An act providing for a primary system for election to a public office is constitutional and valid.

2. Indictments—Sufficiency—Counts—Informalities—Primary Elections.

An indictment against a manager of a primary election for county officials, charging (1) that defendant "did unlawfully, willfully, and fraudulently count and call but fourteen votes for T., a candidate for the office of treasurer . . . when in fact twenty votes were duly and lawfully cast" for him, and (2) a like charge in respect of fraudulently not calling and counting votes cast at such primary for A. for the office of treasurer, expresses the charges sufficiently, and may not be quashed because of "informalities or refinements." Revisal, sec. 3254.

3. Primary Elections—Purity of Elections—Count—Indictable Offense.

Any conduct of the manager of a primary election for county officials which interferes with the freedom or purity of the election is punishable at common law, and under Revisal, sec. 3576.

4. Primary Elections—Indictments—Manager of Primaries—False Returns—County Officials—Oaths.

An indictment against a manager of a primary election for county officials in making unlawful returns need not necessarily

charge that the defendant was a State or county officer, or that he took the oath of office. It is sufficient to allege that the defendant was such manager, for his duties under the statute devolved upon him by virtue of his office.

5. **Primary Elections—Indictment—Managers of Primaries—False Returns—Qualification of Electors.**

It is the duty of the manager of a county primary for the election of county officials to call and count the ballots cast for the various candidates, and the question of the qualification of the electors whose votes he failed to count is unnecessary in considering an indictment against the manager for fraudulently not counting the votes.

6. **Primary Elections—Manager of Primaries—False Returns— Indictments—Misjoinder—Counts—Election by Solicitors.**

The joinder of counts in an indictment against a manager of a county primary election of officers, that he unlawfully, etc., failed to count the ballots cast for T., a candidate for the office of treasurer, and also of A., a candidate for that office, at the same election, is proper, and the solicitor is not required to elect between the counts.

7. **Primary Elections—Manager of Primaries—False Returns— Filing and Registration—Evidence.**

That a paper-writing purporting to be the return of a primary election, signed by the managers, was filed and recorded in the office of the register of deeds, does not make it competent evidence upon the trial of the manager of the election for unlawfully, etc., not returning the count of the ballots cast, the filing and registration not being required by statute. It is necessary to prove the returns by competent evidence.

APPEAL by defendant from *Joseph S. Adams, J.,* at February Term, 1911, of WARREN.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Attorney-General T. W. Bickett, Assistant Attorney-General George L. Jones, and J. C. Little for the State.*

*B. B. Williams, T. T. Hicks, and Thomas M. Pittman for defendant.*

CLARK, C. J. The defendant was a manager of a primary election held Smith Creek Township, Warren County, 9.

August, 1910, under the provisions of chapter 749, Laws 1909, "To provide for and regulate the holding of primary elections in Warren County." He is indicted upon two counts in one bill: (1) That he "did unlawfully, willfully, and fraudulently count and call but fourteen votes for W. S. Terrell . . . a candidate for the office of treasurer of said Warren County, when in fact and truth twenty votes were duly and lawfully cast for said W. S. Terrell"; and (2) a like charge in respect of fraudulently not calling and counting votes cast at such primary for H. B. Alston for the office of treasurer.

From a verdict of guilty and judgment thereon the defendant appeals to this Court: (1) For errors committed upon the trial. (2) Because the statute providing for such primary election is unconstitutional and void.

The indictment was under section 3576 of the Revisal and at the common law.

If the act is unconstitutional, it would be unnecessary to consider the other exceptions; but we take it that it is scarcely necessary to discuss the proposition. The primary system has been so long and so generally recognized that it has become an essential part of our political system. "In the early days of the Republic the nominating system, as now known, did not exist," says Merriam on Primary Elections. "Candidates for local office were presented to the electorate upon their own announcement, upon the indorsement of a mass-meeting, or upon nomination by informal caucuses, while aspirants for State office were generally named by a 'legislative caucus' composed of members of the party in the Legislature." Candidates for President were named by the congressional caucus. After a long struggle the legislative caucus and the congressional caucus were overthrown, largely by the influence of Andrew Jackson, under whose leadership the nominating convention system was adopted. The evils which have grown up under the latter system are too well known to be discussed. The primary system was inaugurated as a relief from those evils. The first primary law was enacted in California in March, 1866, and was closely followed by the New York act in April of the same

year. In 1871, Ohio and Pennsylvania followed their lead, and in 1875, a similar law was passed in Missouri. From that time on the primary system has spread to all parts of the country, and various changes and modifications have been adopted from time to time to cure the evils therein which became apparent.

In this State the first primary laws were enacted in 1901, the first act passed (chapter 524) applying to Mecklenburg County. Chapter 752 in the same year provided the primary system for the counties of Anson, Cabarrus, Dare, Durham, Forsyth, Granville, Haywood, Henderson, Johnston, Northampton, Orange, Pamlico, Richmond, Tyrrell, Wake, and Washington.

In 1903, chapter 123 provided primaries for Richmond County, and chapter 793 for Henderson County.

In Laws 1905, primaries were provided (chapters 795 and 837) for New Hanover County and city of Wilmington.

In 1907, primaries were provided: chapter 116, for Union and Onslow counties; chapter 190, for Rowan and Camden counties; chapter 247, for Buncombe County and Asheville Township; chapter 347, for Robeson County; chapter 399, for Scotland County; chapter 405, for Guilford County and city of Greensboro; chapter 761, for Columbus County; chapter 926, for the counties of Anson, Beaufort, Bladen, Columbus, Davidson, Durham, Halifax, Lenoir, Madison, Martin, Nash, Onslow, and Wake.

In 1908 (Special Session), chapter 57 provided for a primary election in New Hanover County.

In 1909, statutes in regard to primaries were enacted: chapter 494, for Halifax and Nash counties; chapter 771, for Hertford County; chapter 850, for Union County; chapter 876, for Cumberland County; chapter 883, for Scotland County.

In 1911, primaries were enacted: Public-Local Laws, chapter 309, for Wilson County; chapter 342, for Warren County; chapter 412, for Nash County; chapter 906, for Richmond County; chapter 620, for Wake County and the city of Raleigh; chapter 624, for the counties of Currituck, Camden, and Chowan; chapter 633, for Beaufort County; chapter 635, for

Wayne County; chapter 719, for Johnston County; chapter 749, for Cumberland County; chapter 764, for the counties of Bladen, Dare, Gaston, Greene, Northampton, and Pamlico.

Several of the above acts were amendments to correct defects which by experience had been found in prior acts. There may be other primary acts, but those cited are sufficient to show that the primary system and its regulation by law has become an integral part of our political system in North Carolina as well as elsewhere.

While the primary system has not heretofore been before this Court, it has been discussed in numerous decisions in other States and the constitutionality of statutes regulating primary elections has been fully recognized. Among such cases are *Spier v. Baker* (Cal.), 41 L. R. A., 196; *Britton v. Commissioners,* 51 L. R. A., 115; *McCarthy v. Moore* (Minn.), 59 L. R. A., 447, and cases cited in the notes thereto; *Breckon v. Commissioners* (Ill.), 5 A. and E. Anno. Cases, 562. In the notes to the last case the citations are numerous, giving adjudications upon almost every feature of the primary system. The constitutionality of a subject which has been so fully, so long, and so widely recognized by the courts and by legislation cannot be seriously discussed.

As to the exceptions for alleged errors during the trial: Exception 1, for refusal to quash the bill, was properly denied. The indictment expressed the charge against the defendant "in a plain, intelligible, and explicit manner." The grounds urged for quashing savored "of informalities or refinements," for which no bill can be quashed. Revisal, 3254.

The defendant moved to quash the bill because (1) the bill of indictment does not charge any offense within the terms of the act of 1909, ch. 749, nor of section 3576 of the Revisal, nor at common law; (2) that it does not allege that the defendant was a State or county officer; (3) that it does not allege that the acts and omissions complained of devolved upon him by virtue of his office; (4) that it does not allege by what authority he was made pollholder and manager for the alleged primary; (6) that it does not allege for what, if any, political party

such primary was held; (7) that it does not allege that defendant failed or refused to count the votes of any *bona fide* member of the political party for which such primary was held, nor that he was a qualified elector and had taken the prescribed oath that he was a resident of the precinct, was a duly qualified elector, and had not voted before in said primary election; (8) that it is not alleged that the persons for whom such votes were cast and not counted were qualified candidates, entitled to receive votes in such primary for nomination to the office of Treasurer of Warren County.

This primary election was a public election, and any conduct which interferes with the freedom or purity of the election is punishable at common law. Bishop Cr. Law, sec. 471; *S. v. Jackson,* 73 Maine, 91; *Commonwealth v. Silsbee,* 9 Mass., 417; *Commonwealth v. McHale,* 97 Penn., 397. As to the other exceptions, it is not necessary to charge that the defendant was a State or county officer. The bill alleges that he was manager of the election, and his duties under the statute make him an officer. It was unnecessary to allege that those duties devolved upon him by virtue of his office or that he took an oath. *S. v. Wynne,* 118 N. C., 1206; *S. v. Powers,* 75 N. C., 281. It is sufficiently charged that it was a Democratic primary election.

It is unnecessary to discuss the qualification of the electors whose votes the defendant failed to count. These votes had been cast. They had passed the challenger, and when the defendant reached these ballots in the box it was his plain duty to call and count them. He had no right to rule out the votes even if he believed they were invalid, and it is not pretended that he did so.

The two counts in the bill of indictment pertained to the conduct of the defendant at the same time and place and of the same nature and in the same matter of counting votes for the same office. The joinder was proper and did not make the bill multifarious and it was not error to refuse to require the solicitor to elect. It is not unusual in an indictment for larceny to lay the property in one count in A. and in another count in B. or to joint counts for an assault upon different persons when parts of the same act.

The only exception which has given us any difficulty is the second exception. The secretary of the county board of elections and deputy register of deeds was permitted to testify that a paper purporting to be the return of the primary election of Smith Creek Township, held 9 August, 1910, signed by H. F. Hooker and W. J. Cole (defendant), managers, was filed and recorded in the office of the register of deeds. This return was not proven at the trial, and its filing and registration, not being required by the statute, could add nothing to its validity and could not be proof of its execution, particularly as it had not been probated, but was merely shown to be on file and recorded. It was error, therefore, to receive it. For which error there must be a

New trial.